Rabin, J.
The defendants Ralph Eboli and Anthony Caccavale were convicted of attempted coercion in the first degree; conspiracy in the third degree; and three counts of assault in the third degree. The evidence at trial showed that the defendants were attempting to coerce Nicholas Travato into making them his business partners in a bar he operated and partially owned. There was also evidence that Caccavale assaulted Travato with a bar stool and pounded his head onto a cement floor, and that Eboli assaulted a friend of Travato’s. Travato testified that these beatings occurred at his bar on the same evening that he told the defendants that he preferred to “ sink or swim ” on his own in the operation of the bar.
The principal issue on this appeal concerns the conviction of attempted coercion in the first degree, a class E felony. Defendants challenge the statute defining coercion as a felony as violative of the constitutional guarantees of due process and equal protection in that exactly the same elements are required for coercion in the second degree, a misdemeanor, and the choice of the felony or misdemeanor charge is left solely in the discretion of the prosecutor.
Coercion in the first degree is defined in section 135.65 of the Penal Law which provides in subdivision one: “ A person is guilty of coercion in the first degree when he commits the crime of coercion in the second degree, and when: 1. He commits such crime by instilling in the victim a fear that he will cause physical injury to a person or cause damage to property ”. First degree coercion is a class D felony, and the classification is reduced one grade, to a class E felony, if the crime, as here, is attempted coercion.
Coercion in the second degree, a class A misdemeanor, is defined in section 135.60 of the Penal Law which provides in pertinent part: “ A person is guilty of coercion in the second degree when he compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in, or to abstain from engaging in conduct in which he has a legal right to engage, by means of instilling in him a fear that, if the demand is not complied with, the actor or another will:
‘ ‘ 1. Cause physical injury to a person; or
“ 2. Cause damage to property ”.
This section also contains seven other subdivisions listing *285 other methods of committing misdemeanor coercion including instilling a fear that the actor or another will engage in other conduct constituting a crime, will accuse some person of a crime, will expose a secret, will cause a boycott, etc. As to these other types of threats, there is a difference between coercion in the first and second degrees. However, except for a minor variation in language,[1] the crimes of coercion in the first and second degree are identical when the coercion is committed by instilling a fear that a person will be physically injured or that property will be damaged. It is said this identity of elements in the misdemeanor and felony definitions violates the Constitution because, in effect, it grants the prosecutor the power to subject similarly situated defendants to either felony or misdemeanor convictions. While we agree that the statutes as written offer wide prosecutorial discretion, we do not agree that the discretion is such as to render either statute unconstitutional.
It is true that the statutes themselves contain no indication as to when the felony prosecution is more appropriate than the misdemeanor prosecution. However, the Practice Commentaries accompanying the statutes do supply some guidance. Messrs. Denzer and McQuillan, members of the commission which drafted the section, state with regard to the felony coercion section that the “ crime of coercion is here aggravated to a higher degree (a class D felony) where the threat is one to cause physical injury or property damage (§ 135.65 [1]).” (Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 135.65.)[2] This comment suggests that, despite the misde *286 meaner section, coercion by either of these means, was intended to be prosecuted as a felony.
This suggestion is strengthened by an examination of the sections defining the closely related crime of extortion, “ basically a form of coercion in which the act compelled is the payment of money.” (Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 135.60). Larceny by extortion is defined in the same manner as basic coercion (the misdemeanor) with the addition of the element of obtaining property as a result of the threat (Penal Law, § 155.05, subd. 2, par. [e]). Extortion is an element in two degrees of grand larceny. The crime of grand larceny in the third degree, a class E felony, is committed when “ property, regardless of its nature and value, is obtained by extortion ’ ’. (Penal Law, § 155.30, subd. 6.) As noted above, the definition of extortion, like misdemeanor coercion, includes threats of personal injury or property damage. Grand larceny in the first degree, a class C felony, is committed when property is stolen and when ‘ ‘ the property regardless of its nature and value, is obtained by extortion committed by instilling in the victim a fear that the actor or another person will (a) cause physical injury to some person in the future, or (b) cause damage to property ”. (Penal Law, § 155.40.) Here, the use of the language ‘1 extortion committed by instilling in the victim a fear [of injury to person or property] ” implies that the legislative intent was that these two methods of extortion be treated as class C felonies, and that the other methods of extortion be treated as the lower class E felony. The Practice Commentary confirms this: “ In meshing extortion with larceny, the Revised [present] Penal Law also predicates two degrees of extortion, or larceny by extortion * * * The basic, all-inclusive lower offense constitutes grand larceny in the third degree, a class E felony (§ 155.30 [5] [now 6]). The instant section raises the crime to the first degree, a class C felony, when committed by means of certain of the more heinous kinds of threats or intimidation listed in the definitional statute as bases for larceny by extortion (§ 155.05 [2e]): namely threatened physical injury, threatened property damage and threatened use or abuse of public office.” (Denzer and McQuillan, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 155.40.)
*287 Similarly, under the related coercion statutes, it is likely that despite the verbal duplication in the lower degree, the drafters and the Legislature intended that the general rule be that coercion in the first degree, the felony, be charged whenever the method of coercion was to instill a fear of injury to a person or damage to property. Making the misdemeanor offense ‘ ‘ all-inclusive ” is apparently a “ safety-valve ” feature included in the event an unusual factual situation should develop where the method of coercion is literally by threat of persona! or property injury, but for some reason it lacks the heinous quality the Legislature associated with such threats.
In analogous circumstances, we have consistently held that overlapping in criminal statutes, and the opportunity for prosecutorial choice they represent, is no bar to prosecution. Unless there is evidence of legislative intent to the contrary (see, e.g., People v. Knatt, 156 N. Y. 302), the existence of a specific statute prohibiting the conduct involved, does not prevent prosecution under a more general statute. (People v. Bergerson, 17 N Y 2d 398,401; People v. Hines, 284 N. Y. 93, 105.) The same result follows even where the overlap is inherent in the definitions of two offenses. In People v. Lubow (29 N Y 2d 58, 67), it was recognized that the statutory definition of solicitation as a misdemeanor (Penal Law, § 100.05), embraced the elements of the lesser degree, solicitation as a “ violation ” (Penal Law, § 100.00), and consequently, whenever the higher degree of solicitation was committed, so was the lower. Despite this inherent duplication, and the concomitant opportunity for choice by the District Attorney, prosecution for the higher crime was held permissible (29 N Y 2d, at p. 67; see People v. Bord, 243 N. Y. 595).
Appellants argue that these prior holdings are distinguishable. In the cases cited, while the specific conduct involved constituted more than one crime, the elements necessary to make out the different crimes were not identical. For example, the solicitation statutes considered in Lubow provided that solicitation of any crime constituted the lower offense, while the higher offense required solicitation of a felony. As in most statutes creating degrees, the more serious crime is created by the addition of one or more elements to the lesser offense. With regard *288 to the coercion statutes, appellants emphasize that the two degrees are “ defined in precisely the same language ” and argue that as a result, “ they are not different crimes but one and the same crime for which the legislature has provided different punishment.”
This distinction is more apparent than real. As we noted above, read in light of the Commentaries and the related extortion statutes, it seems clear that despite the identity in language, there is & guideline differentiating felony and misdemeanor coercion — in general, the misdemeanor is to be charged where the method of coercion is covered by subdivisions three to nine, and the felony is to be charged if the “ additional element ” of a threat of personal or property injury is involved. In Lubow (supra) the prosecutor had the same opportunity of choice between degrees of crimes whenever the offense solicited was a felony. In that situation, as here, the prosecutor was guided in making his choice between the degrees by the fact that the Legislature obviously intended that, in general, the higher degree would be charged in other than exceptional cases. As here, the discretion to decide what is an “ exceptional ” case warranting prosecution for the lower degree, is entrusted to the prosecutor.
We are aware that there is judicial authority which supports both the type of distinction urged by appellants (see Rose v. Gladden, 241 Ore. 202), and the constitutional argument they advance. (E.g., State v. Pirkey, 203 Ore. 697; State v. Twitchell, 8 Utah 2d 314; Matter of Olsen v. Delmore, 48 Wn. 2d 545; see Berra v. United States, 351 U. S. 131 [dissent per Justice Black] ; Hutcherson v. United States, 345 F. 2d 964 [dissent per Bazelon, J.], cert. den. 382 U. S. 894.) However, the majority of courts which have addressed the issue of the legality of prosecutorial discretion in choosing one of several applicable statutes under which to proceed, have upheld the practice. (Mauney v. United States, 454 F. 2d 273, 274; United States v. Hancock, 441 F. 2d 1285, cert. den. 404 U. S. 833; Black v. United States, 405 F. 2d 187, cert. den. 394 U. S. 990; United States v. Eisenmann, 396 F. 2d 565, 567-568; Hutcherson v. United States, 345 F. 2d 964, cert. den. 382 U. S. 894, supra.)
In Hutcherson v. United States (supra) the challenged prosecutorial choice was between Federal and municipal District of *289 Columbia statutes proscribing the possession of drugs. With regard to possession of drugs, the elements of the two sets of statutes were functionally equivalent (345 F. 2d, at pp. 969, 972-973; Lloyd v. United States, 343 F. 2d 242, 244). However, the penalties under the Federal statute were considerably more severe, and the United States Attorney’s choice to proceed under the Federal statutes determined that appellant was to be tried for a felony rather than a misdemeanor, and subjected to a minimum mandatory sentence. (Hutcherson v. United States, 345 F. 2d, at p. 973.) Nevertheless, the majority in Hutcherson upheld the conviction against a constitutional challenge stating, “ A defendant has no constitutional right to elect which of two applicable statutes shall be the basis of his indictment and prosecution.” (345 F. 2d, at p. 967.)
No doubt these decisions reflect, at least in part, the practical consideration that prosecutorial discretion is inevitable. Given the fact that statutes are written before criminal conduct occurs, it is impossible to fashion statutory definitions which will not overlap under certain circumstances. In at least some situations, therefore, it will be impossible for the Legislature to determine in advance of the particular criminal conduct involved which of two or more applicable statutes shall have precedence. A decision must be made post facto as to which of the various statutes is most appropriate. Of course, the overlap in the coercion statutes could have been narrowed considerably by including some guiding language in the statutes themselves. Nevertheless, whether the overlap occurs because of an avoidable identity of language, or because of the existence of both general and specific statutes, or because disparate statutes are drawn together by particular criminal conduct, the prosecutor is essentially guided by the same general standard: more serious crimes should be charged under statutes providing more serious penalties. Even under fairly precise standards, the prosecutor still possesses the ultimate discretionary power to drop a charge entirely — i.e., however clear the distinction between a felony and a misdemeanor, the choice between prosecution for a felony and no prosecution at all will remain entirely within the prosecutor’s discretion (see Davis, Discretionary Justice, p. 218). While the overall extent of this prosecutorial discretion may *290 properly be an object of concern, we do not believe such concern is significantly served by our drawing a fine distinction which would reach only cases of verbal identity such as the one at bar. In short, we prefer to recognize the irreducible fact that society is presently relying upon the good judgment of its prosecuting attorneys to charge crimes fairly. If this overall discretion is thought too great, or lacking ip sufficient control, the remedy would appear to lie in the creation of general methods, perhaps administrative, to structure and direct that discretion. (See Breitel, Controls in Criminal Law Enforcement, 27 Univ. Chicago L. Rev. 427; Davis, Discretionary Justice, pp. 188-214, 219-222.)
As it is, while the extent of discretion society accords a prosecutor places a heavy responsibility upon him to treat all persons equally, like the majority of courts having considered the question, we do not find that such reliance, on its face, violates the constitutional guarantees of due process or equal protection. Of course, any discretionary power may be abused, and unlawful discrimination in the exercise of a prosecutor’s power to charge would violate the equal protection guarantee of the Constitution. The present appellants make no such claim of actual discrimination or other actual abuse of discretion, and, the testimony at trial certainly supports the District Attorney’s choice of the felony section in this case.
Aside from the constitutional challenges to the coercion statutes, appellants also maintain that they were prejudiced by the trial court’s instructions concerning the elements of conspiracy in the third degree. However, this issue was not preserved for review since no objection was made to the court’s charge. (CPL 470.05, subd. 2.) Moreover, while it is true that some confusion was generated by the court’s explanation of the difference between conspiracy in the second and third degrees, the appellants cannot claim to be prejudiced by this confusion since the jury convicted them of the lesser degree. We find no confusion in the court’s charge, or the jury’s understanding, with regard to the basic elements of conspiracy itself. Neither do we find any merit in appellants’ contention that the evidence supporting their convictions was insufficient as a matter of law.
The order appealed from should be affirmed.
*291 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Stevens concur.
Order affirmed.

. The trial court in its instructions to the jury emphasized the phrase “ or another ” in the lower grade misdemeanor definition. The court stated the distinction between the two grades of coercion to be that in the misdemeanor section the personal physical injury or property damage could be caused either by a third party or by the person instilling the fear in the victim; but that for the felony coercion, the person instilling the fear, and not a third party, would be the one to cause the personal or property injury. We do not believe this approach adequately distinguishes between the sections even if read in the most literal fashion. A person may be said to have “ caused ” injury, even if another person is used as an agent to inflict the injury. (See, also, Penal Law, § 155.05, subd. 6, par. [e] ; § 155.30, subd. 6; § 155.40 [analogous extortion statutes].)

. The Practice Commentaries elaborate on the same basic information as was contained in the Commission Staff Notes on the Proposed Penal Law introduced for study at the 1964 session of the Legislature. (See, e.g., Commission Staff Notes on the Proposed Penal Law, arts. 140, 160.)