OPINION OF THE COURT
Cooke, J.
In a one-count indictment defendant was charged with the crime of attempted coercion in the first degree, for which he was convicted following trial. On this appeal, he contends that the trial court erred in refusing to charge the lesser included offense of attempted coercion in the second degree. In light of the evidence, we find this argument to be without merit, as did the majority in the Appellate Division, and we therefore affirm.
Underlying the attempted coercion was the theft of a number of employee payroll checks by one Garrido, an administrator of Bronx Children’s Hospital. Implicated in the stealing was defendant’s uncle, Joseph Sasso, a maintenance man at the hospital. The evidence at trial showed that while the indictments for these crimes were pending, defendant placed a telephone call to Dr. E. Richard Feinberg, director of the hospital. In the conversation that ensued, defendant urged Feinberg to use his influence to have the indictments dismissed. Upon learning that his request would not be honored, defendant threatened Feinberg, telling him that he could kill him or have him killed.
Based on these threats, defendant was charged with attempted coercion in the first degree in an indictment alleging in pertinent part that: "said defendant, on or about the 21st day of April, 1973 did attempt to compel and induce Dr. E. Richard Feinberg, Director, Bronx Childrens Hospital, Bronx County, to engage in conduct which the latter had a legal right to abstain from engaging in, or to abstain from engaging in conduct in which Dr. Feinberg had a legal right to engage, by instilling in the said Dr. Feinberg that he, the defendant, would cause physical injury to the said Dr. Feinberg. Specifically, the said defendant attempted to compel and induce the said Dr. Feinberg to use his influence regarding pending Bronx County indictments.”
The crime of coercion may be committed by compelling the victim to engage in conduct from which he had a legal right to abstain by instilling in him a fear that if the demand is not complied with a person will be physically injured or property *41 damaged. When the crime is committed in this fashion, it is an anomaly of our statutes that the language used to define the felony of coercion in the first degree (Penal Law, § 135.65) is virtually identical to that employed to describe the misdemeanor of coercion in the second degree (Penal Law, § 135.60). However, this is not as surprising or troublesome as it may at first appear since, in another context involving a constitutional challenge to the felony statute, this court elucidated the purpose behind each of the two degrees of the crime (People v Eboli, 34 NY2d 281). Guided by commentaries and after examining other provisions of law, this court explained that: "under the related coercion statutes, it is likely that despite the verbal duplication in the lower degree, the drafters and the Legislature intended that the general rule be that coercion in the first degree, the felony, be charged whenever the method of coercion was to instill a fear of injury to a person or damage to property. Making the misdemeanor offense 'all inclusive’ is apparently a 'safety-valve’ feature included in the event an unusual factual situation should develop where the method of coercion is literally by threat of personal or property injury, but for some reason it lacks the heinous quality the Legislature associated with such threats” (34 NY2d, at p 287).
Since the statutory definition for the felony crime sets forth as one of its elements that "[a] person is guilty of coercion in the first degree when he commits the crime of coercion in the second degree” (Penal Law, § 135.65), in this case it was "impossible” to commit the first degree offense "without concomitantly committing, by the same conduct” the second degree crime (see CPL 1.20, subd 37). Therefore, it follows that the misdemeanor of coercion is a lesser included offense of felony coercion and should be charged, if requested, "if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater” (CPL 300.50, subd 1; see, e.g., People v Johnson, 39 NY2d 364, 367).
In deciding whether to submit a lesser included offense to the jury, it has been emphasized that "[t]he court’s appraisal of the persuasiveness of the evidence indicating guilt of the higher count is irrelevant” (People v Henderson, 41 NY2d 233, 236). Rather, the focus is on whether there is some reasonable basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one (id.). *42 In other words, it is not for the Trial Judge to speculate as to what will be the ultimate finding of the jury; the court simply determines if there is a reasonable view of the facts which would support a conviction of the lesser crime but not the greater. The evidence must be viewed in the light most favorable to the defendant (People v Shuman, 37 NY2d 302, 304; People v Battle, 22 NY2d 323), and a court must recognize that the jury may decide to accept only part of the prosecution’s proof (People v Asan, 22 NY2d 526, 530). The net effect of submitting the lesser charge may be that the jury will simply extend mercy, but this is acknowledged to be an "inevitable consequence of the jury system” (People v Mussenden, 308 NY 558, 562; see People v Malave, 21 NY2d 26, 29; People v Clemente, 285 App Div 258, 264, affd 309 NY 890).
The coercion statutes present a peculiar problem with respect to lesser included offenses. At first blush, because of the identity of language, it may be logically compelling to suppose that in most if not all cases it is for the jury to assess whether the threat lacked the requisite heinousness needed to convict of the greater crime. However despite the broad latitude given the jury, the court is not required to submit the lesser degree "in every case” (People v Mussenden, 308 NY 558, 562, supra; see People v Shuman, 37 NY2d 302, supra). And, as to these particular offenses, although People v Eboli (34 NY2d 281, supra) involved principally the issue of whether due process or equal protection guarantees are violated when the , People have the discretion to decide whether prosecution” 'for the lower degree is warranted, the analysis in that decision is highly relevant here.
In Eboli, this court construed the misdemeanor as a " 'safety-valve’ feature” and suggested that it was reserved for an "unusual factual situation” (34 NY2d, at p 287). The rationale for this approach is that it would indeed be an exceptional case where the method of coercion is by threat of personal or property injury while at the same time the "heinous quality” is lacking (id.). While a vivid imagination may certainly conjure up a situation where threatened physical injury is not truly fearsome, this would be a rare event indeed.
Drawing from the Eboli analysis, with respect to the issue at hand, it is observed that the initial determination— whether to prosecute for the greater or lesser crime — is made *43 by the People. However, the prosecutor may have decided to seek an indictment for a particular crime based on facts which materially differ from the proof ultimately developed at trial. Hence, before the case goes to the jury, the trial court must determine whether submission of the lesser included offense is warranted based on a reasonable view of the evidence. At this juncture, just as at the preindictment stage, it will be a rare and unusual event for the prosecution to have established coercion by threat of personal physical injury without showing the heinousness ordinarily associated with this manner of commission of the crime. Nevertheless, recognizing that this will be the exception, if it remains a reasonable possibility based on the evidence presented, the trial court should submit the lesser included offense to the jury.
Tested in light of these indicia, we agree that there was no error here in refusing to submit to the jury the lesser included offense of attempted second degree coercion. That charge should be reserved for the "unusual factual situation”, not presented by the evidence here, where the method of coercion is by threat of personal physical injury which for some reason lacks a heinous quality. In this instance, the malevolent nature of the threat is at once obvious in defendant’s proposal to kill or have the victim killed. A lack of odiousness is not remotely inferrable from Dr. Feinberg’s failure to call the local police, since defendant warned against calling law enforcement authorities and, in any event, Feinberg immediately called a number given him by the Bronx District Attorney’s Office. The victim’s failure to agree outwardly to comply with the demands made would also not indicate mitigation on defendant’s part. Furthermore, that the caller offered an invitation to meet face to face and have supper does not show that the death threat was not heinous in nature and would hardly suggest that a leisurely repast was contemplated. Certainly, on this proof charging the lesser included offense would force the jury "to resort to sheer speculation” (cf. People v Bracey, 41 NY2d 296, 302, mot for rearg den 41 NY2d 1010), since, fundamentally, the jury should not be permitted to choose between the crime charged and some lesser crime where the evidence essential to support a verdict of guilt of the lesser necessarily proves guilt of the greater crime as well (cf. People v Richette, 33 NY2d 42, 47; see, also, People v Alamo, 34 NY2d 453, 457; People v Reisman, 29 NY2d 278, 287). In light of the uncontroverted *44 evidence, the requested charge was manifestly unwarranted and properly denied.
Finally, contrary to defendant’s assertion, it is the Appellate Division, and not this court, which is authorized to reduce a sentence in the exercise of its discretion and in the interest of justice (CPL 470.15, subd 6, par [b]; 470.20, subd 6). Since the sentence was not unlawful and was within legal limits, defendant may not obtain such relief here (People v Gittelson, 18 NY2d 427, 430; People v Speiser, 277 NY 342, 344).
Accordingly, for the reasons stated, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.