■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALLEN HERTZ, Appellant.—Appeal by defendant from a judgment of the Supreme

Court, Queens County, rendered March 14, 1979, convicting him of coercion in the first degree, upon a jury verdict and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. The facts in this case arise out of what, in essence, had been an intrafamily dispute. The complainant, defendant's wife at the time of the commission of the alleged offense, had separated from defendant and in November, 1976, she obtained a Family Court order of protection. In December, 1976, defendant was arrested for a violation of this order, apparently having threatened to "put [the complainant] in cement." Pursuant to the administrative practice of the New York City Pistol Licensing Division, defendant's pistol permits were temporarily suspended pending an administrative hearing. Said hearing was held in June, 1977 and defendant's permits were permanently revoked. Anxious to regain his permits because they were necessary to his continued employment as a private investigator, defendant allegedly engaged in a campaign of making constant threats against the complainant, with whom he had resumed cohabitation in May, 1977. The complainant testified that she was subjected to almost daily threats by defendant in order to secure her intercession on his behalf before the Pistol Licensing Division. Notwithstanding the constant nature of such threats, none of which was accompanied by physical abuse, the complainant testified that she did not yield to defendant's desires until sometime in September or October, 1977. At that time she appeared at defense counsel's office and agreed to sign an affidavit which stated that she had no objection to renewal of the permits. According to the complainant, on numerous occasions defendant had threatened to have her killed and to take their daughter away unless she helped him "get his guns back." Her explanation to defendant's counsel at the time was that she signed the affidavit "because she wanted to have some peace in the house." Revocation of defendant's permits was temporarily overturned. However, the revocation was reinstated in October, 1977. The complainant further testified that sometime in February or March, 1978, she again yielded to defendant's threats to kill her unless she helped him in his efforts to have his gun permits restored. This time she spoke on defendant's behalf to one Captain Olpe of the New York City Pistol Licensing Division. Upon separating from defendant in June, 1978, the complainant initiated the instant prosecution. The evidence adduced at the trial was sufficient to justify the jury's finding defendant guilty of coercion in the first degree. Nevertheless, we believe the trial court, under the circumstances, committed reversible error in refusing defendant's request to submit the crime of coercion in the second degree to the jury as a lesser included offense. As noted in *People v Discala* (45 NY2d 38, 41), when the crime of coercion in the first degree is alleged to have been committed by instilling in the victim a fear of physical injury, the elements of coercion in the first degree (Penal Law, § 135.65) are identical to those of coercion in the second degree (Penal Law, § 135.60). The purpose of this similarity is to provide a "safety-valve" misdemeanor offense to cover those situations in which, although "the method of coercion is literally by threat of personal or property injury * * * for some reason it lacks the heinous quality the Legislature associated with such threats" *(People v Eboli,* 34 NY2d 281, 287). From this the Court of Appeals later concluded in *People v Discala (supra,* pp 42-43), that coercion in the second degree would be properly chargeable only in the unusual event that a reasonable view of the evidence, in the light most favorable to the defendant, indicates that the act charged had lacked the requisite heinousness of the greater offense. As mentioned above, the alleged threats testified to occurred in the course of an

intrafamily dispute. While such in and of itself does not mandate the lesser charge, in light of the unique relationship involved, the heinous intent behind the threats is questionable. Supporting this hypothesis is the fact that these threats had continued over a substantial period of time without ever, despite their initial lack of effect, escalating beyond mere threats. These circumstances, viewed in a light most favorable to defendant, could lead a reasonable jury to conclude that the coercion practiced had been of a nonheinous nature. The trial court, therefore, was obligated to submit the lesser included offense to the jury as requested. In addition, the court's charge was often inappropriate and confusing. Included in the statements uttered to the complainant were threats directed against Captain Olpe and his children and threats to take the complainant's child. Although these threats were admissible to show a general scheme to compel the complainant's intercession on his behalf, strict instructions were required in order that the jury be made aware that it was fear of injury to the complainant which was alleged to have constituted the coercion. Not only were these limiting instructions lacking, but by the court's general charge the jury might well have concluded that it could convict based upon the threats voiced by defendant against persons other than the complainant. Although this error was not specifically objected to, defendant did request unsuccessfully an instruction that if the jury should conclude that the victim did not act out of fear of physical injury, it may acquit. This objection adequately preserved the error for review. Further errors include (1) the discussion of coercion by threat to withhold testimony on another's behalf (Penal Law, § 135.60, subd 7), which was irrelevant to the instant prosecution, and (2) the failure to instruct the jury that the People must prove every element of the offense beyond a reasonable doubt, after precluding defense counsel from discussing it in summation as previously agreed. (see *People v Newman,* 46 NY2d 126). In reversing we further note that upon retrial the defendant must be given some leeway in developing the defense of the complainant's financial motivation to intercede on his behalf, and that while defendant may properly be cross-examined concerning his prior assertions of his Fifth Amendment privilege, the court must give instructions limiting the effect of such prior assertions exclusively to purposes of impeachment (see *People v Clegg,* 18 AD2d 694). Finally, while the People must be given a certain amount of leeway in developing the factual background of the case, it will be sufficient upon retrial to advise the jury that defendant's permits had been revoked upon the complainant's complaint, without detailing that either the administrative tribunal or the Family Court had found against defendant upon complaints of threats similar to those underlying the instant offense (see *People v Rosenfeld,* 11 NY2d 290, 297-298). Hopkins, J. P., Damiani, Titone and Lazer, JJ., concur.