People v Anatriello (2018 NY Slip Op 03564)





People v Anatriello


2018 NY Slip Op 03564


Decided on May 17, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 17, 2018

108315

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
TIMOTHY J. ANATRIELLO JR., Appellant.

Calendar Date: March 29, 2018

Before: Garry, P.J., Egan Jr., Devine, Aarons and Rumsey, JJ.


Paul J. Connolly, Delmar, for appellant.
P. David Soares, District Attorney, Albany (Emily A. Schultz of counsel), for respondent.


Rumsey, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered November 26, 2014, upon a verdict convicting defendant of the crimes of coercion in the first degree, criminal possession of a weapon in the fourth degree and reckless endangerment in the second degree.
One evening in December 2013, defendant's then-girlfriend (hereinafter the victim) arrived at the two-story residence that she shared with defendant, his sister and his father. When the victim spoke by telephone with defendant, who was not then at home, he demanded that she not leave the house. Approximately one-half hour later, defendant arrived home, kicked open the door to their upstairs bedroom, where the victim was waiting, and began to strike her head with a closed fist while holding a knife
in his other hand. During defendant's attack on the victim, defendant's father, who was on the first floor, called to defendant from the bottom of the stairs to ask what was happening and, in response, defendant stated that the victim was "going to die" that night. Defendant continued to strike the victim and choked her before ultimately stabbing her three times with the knife. When defendant went downstairs to obtain a rifle, the victim called 911. Upon returning to the bedroom, defendant taunted the victim with the gun by pointing it in her face and telling her that she would never again see her son. Defendant then went outside, armed with the knife and the rifle, but retreated to the inside of the home almost immediately after noticing that the police were present. Defendant returned to the second floor and the gun discharged as defendant stood at the top of the stairs. The victim eventually escaped from the home and defendant surrendered [*2]to the police several hours later.
Defendant was thereafter charged by indictment with kidnapping in the second degree, assault in the second degree, criminal possession of a weapon in the third degree, coercion in the first degree, strangulation in the second degree, criminal possession of a weapon in the fourth degree, reckless endangerment in the second degree and menacing a police officer. After a jury trial, defendant was convicted of coercion in the first degree, criminal possession of a weapon in the fourth degree and reckless endangerment in the second degree [FN1]. County Court sentenced defendant, as a second felony offender, to an aggregate prison term of 2 to 4 years and issued a no-contact order in favor of the victim. Defendant appeals.
Defendant argues that the evidence was legally insufficient to convict him of coercion in the first degree and reckless endangerment in the second degree and, further, that his convictions on these charges were against the weight of the evidence. "When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. Moreover, in assessing the weight of the evidence, where, as here, a different verdict would not have been unreasonable, this Court must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Robinson, 156 AD3d 1123, 1124-1125 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 1119 [2018]). In conducting a weight of the evidence analysis, we must give deference to the jury's credibility assessments (see People v Williams, 156 AD3d 1224, 1226 [2017]).
With regard to his conviction for coercion in the first degree, defendant contends that there was insufficient evidence establishing that he compelled the victim to remain in the home by threatening to kill her or by physically preventing her from leaving. As relevant here, "[a] person is guilty of coercion in the first degree when [such person] commits the crime of coercion in the second degree, and when . . . he or she commits such crime by instilling in the victim a fear that he or she will cause physical injury to [the victim]" (Penal Law § 135.65 [1]). "A person is guilty of coercion in the second degree when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in, or to abstain from engaging in conduct in which he or she has a legal right to engage . . . by means of instilling in [the victim] a fear that, if the demand is not complied with, the actor . . . will . . . [c]ause physical injury to a person" (Penal Law § 135.60 [1]).
It was undisputed that defendant demanded that the victim not leave their home, that he pinned her down and punched her several times with a closed fist, choked her, stabbed her three times with a knife, verbally called her derogatory names, threatened her by stating that she would never again see her son while pointing a gun in her face and discharged the gun in the house. The victim testified that defendant refused her requests that he permit her to leave the home — telling her that she would need to wait until the next day to seek medical attention for her stab wounds — and that she did not leave the home because she was unsure where his knife was and did not want to "escalate" the situation. Viewing the evidence in the light most favorable to the [*3]People, the evidence was legally sufficient to prove that defendant committed coercion in the first degree by compelling the victim to remain in the home by instilling the fear that he would physically injure her if she attempted to leave. Moreover, although an acquittal on this charge would not have been unreasonable, when we view the same evidence in a neutral light and defer to the jury's credibility assessments, we find that defendant's conviction for coercion in the first degree was not against the weight of the evidence.
Defendant also contends that his reckless endangerment conviction was not supported by legally sufficient evidence. "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person" (Penal Law § 120.20). It is undisputed that the gun was fired from a location near the top of the stairs on the second floor and that the bullet traveled downward through the ceiling of the first floor bathroom. The victim testified that she was in the adjacent bedroom when the gun was fired and that defendant's father was on the first floor. Defendant's father testified that he was on the second floor attempting to convince defendant to surrender the weapon when it fired. Defendant argues that the discharge of the gun could not have posed a substantial risk of serious physical injury to anyone based on the testimony that there was no one on the first floor when the shot was fired and, further, that there was no proof that he fired the gun with the requisite intent. Viewing this evidence in the light most favorable to the People, we find that it is legally sufficient to support defendant's conviction for reckless endangerment in the second degree. The victim's testimony that defendant's father was on the first floor placed him in the general path of the bullet and, therefore, at substantial risk of injury. Moreover, defendant's discharge of the gun also created the substantial risk that the victim and defendant's father — even if he was standing on the second floor near defendant — could have been injured by a ricocheting bullet or by a sudden movement into the path of the bullet (see People v Byrd, 79 AD3d 1256, 1257 [2010]; People v Graham, 14 AD3d 887, 889 [2005], lv denied 4 NY3d 853 [2005]). With respect to intent, the victim's testimony that defendant was alone when the gun discharged is a sufficient basis for inferring that defendant intentionally fired the weapon. Moreover, although an acquittal on this charge would not have been unreasonable, when we view the same evidence in a neutral light and defer to the jury's credibility assessments, we find that the conviction for reckless endangerment in the second degree was not against the weight of the evidence.
Defendant next argues that County Court committed reversible error when it denied his request to charge him with coercion in the second degree as a lesser included offense of coercion in the first degree. "To establish entitlement to a lesser included offense charge, a defendant must demonstrate that, in all circumstances, it is impossible to commit the greater crime without concomitantly, by the same conduct, committing the lesser offense and, secondarily, that there is a reasonable view of the evidence that would support a finding that he or she committed the lesser offense but not the greater" (People v Luciano, 152 AD3d 989, 994 [2017] [internal quotation marks, brackets and citations omitted], lv denied 30 NY3d 1020 [2017]). In determining whether defendant was entitled to the lesser included charge of coercion in the second degree, "we must view the evidence in the light most favorable to defendant" (id. at 995 [internal quotation marks and citation omitted]).
The Court of Appeals has "recognized that the crimes of coercion in the first and second degree are identical when the coercion is committed by instilling a fear that a person will be physically injured or that property will be damaged" (People v Finkelstein, 28 NY3d 345, 348 [2016] [internal quotation marks and citation omitted]). It explained, however, "that the felony of coercion in the first degree [must] be charged whenever the method of coercion was to instill a fear of injury to a person or damage to property" (id. [internal quotation marks, ellipsis and citation omitted]). As such, the Court continued, "second-degree coercion should be charged as a [*4]lesser included offense only in the unusual factual situation in which the coercion by threat of personal or property injury lacks the heinousness ordinarily associated with this manner of commission of the crime . . . [i.e., where] the threatened physical injury is not truly fearsome" (id. at 349 [internal quotation marks and citation omitted]). This case does not present one of those unusual factual situations that would justify charging coercion in the second degree as a lesser included offense in light of the evidence showing that defendant threatened to kill the victim, pinned her to the ground with his body, choked her, stabbed her three times with a knife and threatened that she would never again see her son while holding a gun in her face. Thus, County Court properly denied defendant's motion to charge the lesser included offense of coercion in the second degree.[FN2]
Finally, defendant argues that County Court erred when it permitted police officers to testify, over his objection, regarding his refusal to communicate with them while he remained in the home after the victim left, the various efforts made by the police to induce defendant to vacate the residence, his refusal to exit until they fired tear gas into the home and his refusal to communicate with them after he surrendered. Assuming, without deciding, that the testimony regarding defendant's interaction with the police was not relevant to commission of the crimes with which he was charged or necessary to complete a coherent narrative of the relevant events, we nonetheless conclude that any error in admitting such testimony was harmless beyond a reasonable doubt because there was no reasonable possibility that the error might have contributed to defendant's conviction (see People v Crimmins, 36 NY2d 230, 241-242 [1975]; People v Gray, 151 AD3d 1470, 1472 [2017], lv denied 30 NY3d 949 [2017], cert denied ___ US ___, 138 S Ct 1295 [2018]; People v Sprague, 267 AD2d 875, 880 [1999], lv denied 94 NY2d 925 [2000]).
Garry, P.J., Egan Jr., Devine and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The kidnapping charge was dismissed at the close of the People's case-in-chief and defendant was acquitted of the remaining charges.

Footnote 2: Defendant concedes that his argument that County Court erred by making a factual determination that his conduct was heinous was not preserved for our review (see People v Finkelstein, 28 NY3d at 348), and, in the light of the nature of his conduct, we decline his request that we exercise our interest of justice jurisdiction to take corrective action.